49 CCPA

**Application of Francis Trigg PARFREY.**
**Patent Appeal No. 6830.**

United States Court of Customs and Patent Appeals.
July 18, 1962.

Wesley B. Taylor, Cleveland, Ohio, Hiram P. Settle, Jr., Washington, D. C., Oberlin, Maky & Donnelly, Cleveland, Ohio, (Almon S. Nelson, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (S. William Cochran, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

WORLEY, Chief Judge.

The sole issue in this appeal is whether appellant is entitled to copy a single claim[1] from a patent. The Board of Appeals affirmed the Primary Examiner's holding that he was not so entitled. Appellant asks us to reverse.

Appellant seeks to copy claim 15 from

Burch    2,898,633    August 11, 1959,
(filed July 21, 1953).

That claim corresponds to claim 13 of the instant application and reads:

"13. The method of forming hollow plastic articles comprising issuing a hollow open-ended substantially tubular formation of thermoplastic material from an orifice, said material of the issued formation being in a condition of plasticity to permit expansion and setting in predetermined form, engaging said issued formation at at least one point, quickly severing a length of the formation intermediate said engagement and the orifice and in such a manner as to leave the severed ends of said formation open, substantially coincident with said severing moving the engaged and severed length of the formation away from the orifice to space apart said severed ends of said formation, pinching and sealing said severed length at a point thereon within molding apparatus, and expanding the severed length to the walls of the molding apparatus by applying fluid under pressure through the open end of said severed length."

Appellant's instant application[2] relies on the common subject matter disclosed in a parent application, having an effective filing date of December 17, 1951, about one year and seven months prior to Burch's filing date. All further reference to appellant's specification shall be to the parent application unless otherwise stated.

Appellant's specification discloses a method of forming hollow articles, such as bottles, from thermo-plastic synthetic materials. According to that method the plastic material, in "a very hot and soft condition," is continuously extruded downwardly in the form of a tube. A mandrel containing an air inlet tube is inserted upwardly into the lower end of the tubular plastic material. A mold consisting of two sections is closed to surround a length of the extruded forma-

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

1. The appeal was taken as to claims 6, 7, 9, 10 and 13, all the claims in appellant's application. Appellant, by motion filed November 21, 1961, and granted November 29, 1961, dismissed the appeal as to all claims except claim 13.

2. The instant application, S.N. 852,896, filed Nov. 13, 1959, is a continuation-in-part of appellant's application S.N. 583,-664, filed May 9, 1956, now Patent No. 2,980,079, issued March 29, 1960, which in turn is a continuation-in-part of the parent application, S.N. 325,135, filed Dec. 10, 1952, now Patent No. 2,903,740, issued Sept. 15, 1959. Each of the three U. S. applications claim foreign priority based on an Australian patent application filed Dec. 17, 1951.

tion, pinching closed the upper end portion of the extruded matter. The plastic material is then immediately cut, in a direction parallel to the axis of the pinch, by a blade which "will travel across, and in contact with, the lower end of the extrusion die." Substantially simultaneously with the severing the closed mold is pivotally tilted out of the way of the continuously extruded tubing. Air is forced through the air inlet tube, causing the plastic to assume the configuration of the mold. The mold is thereupon opened, the blown article ejected and the mold returned to clasp another length of extruded plastic.

The Burch patent discloses essentially the same method. It also states:

"* * * It is critical to this method of forming plastic containers that the severed ends * * * reopen * * * after the severing step. If the step is performed quickly the ends will reopen, due to the elastic memory of the plastic material, but if the severing step is performed slowly the ends will be squeezed together and sealed. It is therefore important that the severing step should be performed quickly or in such a manner that the end of the tubing being extruded is left open. To aid in the reopening of the ends and to compensate for the continuous extrusion of the tubing, it is preferred to quickly move the mold axially away from the point of extrusion simultaneously with the severing operation. * * *"

The severing step in Burch's method is performed by "shears" which have a scissor-like action, and are located between the extrusion die and the top of the closed mold.

The examiner's position is set forth in his answer as follows:

"* * * the limitation 'quickly severing a length of the (issued) formation *intermediate* said engagement and the orifice * * *' is not supported by applicant's disclosure. It is the Examiner's contention that

the severing operation as covered by this claim (particularly when read in light of the Burch disclosure) can only be interpreted as covering severing the tubular formation at a point *spaced from the orifice*; otherwise the very thing or object underlying the Burch patent (see column 2, lines 1 to 15) would be defeated. The problem of reopening of the tubular formation would not exist if the severing element passes across and in contact with the extrusion orifice so as to cut the extrudate and wipe the orifice clean—a severing operation to which applicant's disclosure is *limited*. * * *"

The board did not agree with the examiner's contention, yet affirmed, stating:

"* * * we do not find, nor has appellant pointed out any such common subject matter teaching 'quickly severing a length of the formation intermediate said engagement and the orifice and in such a manner as to leave the severed ends of said formation open' (under_lining added) as set forth in claim 13. From the disclosure common to appellant's three cases, it would appear that the top end of the severed tube would probably be closed *since it would be pinched* by the elements 35 as well as *by the knife.* * * *" (Emphasis supplied.)

Therefore, the issue is whether appellant's method necessarily includes the step of "quickly severing a length of the formation * * * in such a manner as to leave the severed ends of said formation open."

It is not disputed that appellant's application does not expressly disclose that both ends remain open. Therefore, the disclosure in appellant's specification must be such that one skilled in the art would consider the presence of that step as the "necessary and only reasonable construction to be given the disclosure." In re Edward C. Filstrup, Jr., 251 F.2d 850, 45 CCPA 783.

In our opinion that condition exists in the instant case. Here the specification states that "it is necessary to eliminate as far as possible all waiting time so that no operation is held up or delayed owing to the time taken for performing another operation." Also the cutter is a pneumatic type and the cut is made at a point close to the pinch made by the closed mold. Further, the plastic is such that "it will be readily cut by the cutter blade."

The board conceded that the portion of the tube above the cut remained open, but considered it probable that the lower side of the cut would be closed. The reason for the board's position is stated in its decision on reconsideration as follows:

> " * * * there is nothing to prevent the lower side of the cut material from closing as it is cut, particularly since the members 35 have pinched, or are pinching, the tube closed a short distance below the cut."

Such a view appears to overlook those facts set forth in the preceding paragraph, as well as the fact that the cutter moves in a direction parallel to the axis of the pinch. There is no indication that such a cut would even cause the lower side to close, let alone remain closed.

In Burch the scissor-like action causes the tube to close at the time of the cut. Burch recognized that and stated that the tube would reopen if certain conditions were present. As recognized by the examiner, appellant's method would not encounter that problem as the sides of the cut do not close.

In our opinion the "necessary and only reasonable construction" to be given appellant's disclosure by one skilled in the art is that the tubing on *both* sides of the cut remains open.

Accordingly, the decision is reversed.

Reversed.

MARTIN, J., did not sit or participate because of illness.